IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jennafer Schnaudt, *et al.*,

        Plaintiffs,                                                                     Case No: 2:15-cv-2619

    v.                                                                                                    Judge Graham

Johncol, Inc., *et al.*,

        Defendants.

Opinion and Order

        Plaintiffs Jennafer Schnaudt, Hamdi Hassan and Nicholas Mooney bring this putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Plaintiffs are former pizza delivery drivers for Papa John's restaurants in the Columbus, Ohio area. Defendant Johncol, Inc. is a Papa John's franchisee that operates the stores where plaintiffs worked. Defendants Allen Hertzman and Charles Burris respectively serve as the President and Vice President of Johncol.

        This matter is before the court on defendant's motion to compel arbitration and dismiss the complaint. For the reasons stated below, the motion is granted as to plaintiff Hassan's individual claim for retaliatory termination and the motion is provisionally granted as to the remainder of the claims.

**I.    Background**

        Schnaudt was employed as a delivery driver for Papa John's from December 2012 to June 2014. Hassan worked as a delivery driver from April 2012 until October 2013. Opt-in plaintiff Mooney worked as a delivery driver from July 2012 to February 2013 and again from October 2013 to March 2014. When plaintiffs were not making deliveries, they were required to work inside the restaurant and perform such tasks as making pizza, taking orders and cleaning the store. They were paid a "tipped pay rate" of $4.25 per hour for time spent delivering pizzas, and they were paid minimum wage ($7.85 in 2013) for time spent working inside the restaurant.

        The complaint alleges that defendants maintained a practice of over-counting the amount of time plaintiffs were on the tipped pay rate. Defendants allegedly did so by placing plaintiffs on that rate at the time an order was received rather than at the time drivers left to make the delivery, which was generally 20 minutes after an order was received.

1

Hassan further alleges that he was terminated shortly after he confronted a manger with his claim that defendants were engaging in unfair wage practices.

The complaint alleges that defendants' practice of over-counting the time plaintiffs were paid at the tipped pay rate is a violation of the FLSA and the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111, *et seq.* The complaint alleges that there is a group of similarly situated individuals, who are current and former delivery drivers employed at the Papa John's restaurants owned and operated by defendants, for whom defendants likewise over-counted the time they were paid at the tipped pay rate. The complaint also asserts a claim on behalf of Hassan for retaliatory termination under the FLSA.

Before plaintiffs began their employment, they each attended an orientation meeting which lasted about 45 minutes to an hour. See Schnaudt Aff., ¶ 18; Hassan Aff., ¶ 12; Mooney Aff., ¶ 8. They were presented with a packet of documents, including an employee handbook, dress code policy, delivery driver policy, tax documents and a Dispute Resolution Program ("DRP") booklet and DRP Agreement. See Schnaudt Aff., ¶ 12; Hassan Aff., ¶ 13. In at least one instance, a Johncol manager conducted the meeting and reviewed the highlights of the documents on a projector screen. See Schnaudt Aff., ¶ 16. In another instance, a Johncol representative quickly cycled through the documents, spending up to 10 seconds talking about each one. See Hassan Aff., ¶ 16.

At the meetings, plaintiffs were instructed to sign certain documents. They felt "rushed" or "hurried" to sign the documents. See Schnaudt Aff., ¶ 17; Hassan Aff., ¶ 16; Mooney Aff., ¶ 16. None of the plaintiffs claim that they requested either an opportunity to have additional time to review the documents, to ask questions about the documents or to consult with an attorney.

Among the documents each of the plaintiffs signed was the DRP Agreement. See Easley Decl., ¶ 5, Exs. C-F. Hassan signed a version of the DRP Agreement that dated to 2005, while Schnaudt and Mooney signed a June 2012 version.[1] Id., ¶¶ 6-8. The Agreement contained an acknowledgement from each plaintiff that they had received and had an opportunity to review the DRP booklet, whose provisions would govern the resolution of disputes between the employer and employees. See DRP Agreement (Doc. #20-1) at PAGEID 236, 247. The parties made a "mutual promise to resolve claims by binding arbitration" and agreed "that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and exclusive final remedy for resolving any such claim or dispute." Id. Among the

---

[1] Although the 2005 and June 2012 versions of the DRP Agreement contain some variations, the court will refer to them together as the DRP Agreement.

types of claims that were expressly identified as being subject to arbitration were "claims for wages or other compensation" and "claims for retaliation under any law." Id. at PAGEID 233, 244. The Agreement further provided that arbitration would be conducted on the basis of individual claims and not on a collective basis. Id. at PAGEID 236, 247.

## II.     Standard of Review

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA applies in the employment setting, such that agreements to arbitrate employment-related claims are generally enforceable. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991). Where a cause of action is determined to be covered by arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–83 (1960).

Further, "the Supreme Court has held that the FAA preempts state law regarding arbitration." Glazer v. Lehman Bros., Inc., 394 F.3d 444, 451 (6th Cir. 2005) (citing Southland Corp. v. Keating, 465 U.S. 1, 10–11 (1984)). Even so, state contract law governs issues of formation, such as validity, revocability, and enforceability, with respect to arbitration clauses. See Perry v. Thomas, 482 U.S. 483, 492 n. 9 (1987). "The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 377 (6th Cir. 2005).

"In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." Raasch v. NCR Corp., 254 F.Supp.2d 847, 851 (S.D. Ohio 2003).

### III.     Discussion

Defendants move to compel arbitration and dismiss this litigation.  The Sixth Circuit has stated the applicable inquiry as follows:

> When considering a motion to stay proceedings and compel arbitration under the [Federal Arbitration] Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000).

#### A.     An Agreement to Arbitrate

"In determining whether the parties have made a valid arbitration agreement, 'state law may be applied *if* that law arose to govern issues concerning the validity, revocability,' and enforceability of contracts generally, although the FAA preempts 'state laws applicable to *only* arbitration provisions.'"  Great Earth Cos. v. Simons, 288 F.3d 878, 889 (6th Cir. 2002) (emphasis in original) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996)).  Thus, "[s]tate law governs 'generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability.'"  Id. at 889 (quoting Casarotto, 517 U.S. at 687).

Here, it is undisputed that plaintiffs signed the DRP Agreements in Ohio and that their employment occurred in Ohio.

#### 1.     Whether Plaintiffs knowingly and voluntarily waived their Constitutional Right to a Jury Trial

"It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. . . . Indeed, a presumption exists against its waiver."  Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977) (citing Johnson v. Zerbst, 304 U.S. 458, 464 (1938) *overruled in part on other grounds by* Edwards v. Arizona, 451 U.S. 477 (1981)); see also Boyd v. Allied Home Mortg. Capital Corp., 523 F.Supp.2d 650, 653 (N.D. Ohio 2007) (citing Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937)).  The Sixth Circuit has found that "the constitutional right to jury trial may only be waived if done knowingly, voluntarily and intentionally, and [ ] whether this standard was met in a given case is a constitutional question separate and distinct from the operation of rules of substantive contract law . . . ."  K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752, 755-56 (6th Cir. 1985).

4

In evaluating whether a plaintiff has knowingly and voluntarily waived his right to pursue employment claims in court, the court considers: (1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 381 (6th Cir. 2005).

As to the first factor, plaintiffs note that they were all unemployed at the time they accepted work with Johncol. Further, Hassan had a wife and two children to support, and Mooney was a 19 or 20 year-old college student at the time he was first employed by Johncol. See Hassan Aff., ¶ 6; Mooney Aff., ¶ 5.

The sparse facts presented by plaintiffs regarding the first factor do not demonstrate that plaintiffs were uneducated or that they were unable to read, to understand English or to comprehend the documents presented to them at the orientation meeting. At most, they were individuals who needed employment and decided to accept work in a low-wage position. This does not support a conclusion that their waivers were unknowing or involuntary. Compare Tillman v. Macy's, Inc., 735 F.3d 453, 461 (6th Cir. 2013) (rejecting the argument that plaintiff merely being "a high-school graduate means that she lacks the necessary 'experience, background, and education' to consent knowingly to a waiver of her rights") with Walker, 400 F.3d at 381 (holding that the first factor weighed against enforcing waiver because plaintiffs had not completed high school and were in "dire financial circumstances").

Turning to the second factor, plaintiffs allege that they felt rushed to sign paperwork at their respective orientation meetings. But none of them have asserted that they were told not to read the documents or that they requested and were denied more time to review the DRP Agreement or to consult with an attorney. See Porter v. MC Equities, LLC, No. 1:12 CV 1186, 2012 WL 3778973, at *12 (N.D. Ohio Aug. 30, 2012) ("[A]lthough plaintiffs assert that they did not have adequate time to review the Agreements and defendants did not explain the Agreements to them, the plaintiffs have not shown that they sought and were denied desired time to consider the Agreements, that defendants made affirmative misrepresentations to them about what they were signing or otherwise 'tricked' them into signing the Agreements, or that circumstances were made known to the defendants indicating that plaintiffs were confused or unclear about what they were signing."); Gonzalez v. Rent-A-Center, Inc., No. 05-cv-005, 2005 WL 1353883, at *4 (N.D. Ohio June 7, 2005)

(holding that being "rushed into signing" does not invalidate a contract; plaintiffs must show "fraud, deception or other misconduct be defendant in order to prove the Agreement invalid").

The court acknowledges that it would be unrealistic to expect plaintiffs to have quickly digested the contents of the 7-page DRP booklet at the orientation meeting. Even so, the DRP Agreement itself was only one-and-a-half pages long, and its substance was plainly communicated by the title of the document ("Agreement and Receipt for Dispute Resolution Program") and by the provision that began in boldface with "MUTUAL PROMISE TO RESOLVE CLAIMS BY BINDING ARBITRATION." See DRP Agreement at PAGEID 236, 247. That provision then clearly and succinctly stated that "all legal claims or disputes" would be "submitted to binding arbitration." Id. Thus, even a cursory review of the Agreement would have impressed on the reader the nature of its contents. Further, the Agreement advised plaintiffs of their right to discuss the Agreement with their own attorney. This sentence appeared in a location where it was likely to be seen – the first line of a two-sentence paragraph immediately above the signature line. Id. at PAGEID 237, 248.

The court further finds that the Agreement was supported by consideration, namely defendants' offer to employ plaintiffs. Plaintiffs were employed as at-will employees. See DRP Agreement at PAGEID 236, 247. Under Ohio law, at-will employment is contractual in nature. Lake Land Emp. Grp. of Akron, LLC v. Columber, 101 Ohio St.3d 242, 247, 804 N.E.2d 27, 32 (Ohio 2004). The employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee. Id. The employer or the employee may legally terminate the relationship at any time for any reason, and either may propose to change the terms of their employment relationship at any time. Id. "Thus, mutual promises to employ and to be employed on an ongoing at-will basis, according to agreed terms, are supported by consideration: the promise of one serves as consideration for the promise of the other." Id.

Here, plaintiffs agreed to the terms of the DRP Agreement as a term of their at-will employment. Defendants agreed to employ plaintiffs if they consented to the DRP Agreement. The court finds that defendants' offer of employment constituted sufficient consideration to support the plaintiffs' promise to submit disputes to arbitration. See Dantz v. Am. Apple Grp., LLC., 123 Fed. App'x 702, 709 (6th Cir. 2005) (holding that under Ohio law, continued employment of an at-will employee was sufficient consideration to support a binding arbitration agreement); Gonzalez, 2005 WL 1353883, at *4 (holding that an employer's offer of employment is sufficient consideration

to support an arbitration agreement); <u>Butcher v. Bally Total Fitness Corp.</u>, No. 81593, 2003 WL 1785027 at *5, (Ohio Ct. App. Apr. 3, 2003) (same).

Turning to the totality of the circumstances, plaintiffs argue that they "were entering the employment relationship with positive feelings, happy to be earning a paycheck," and thus "had no reason to be skeptical" of the documents that defendants presented to them at the orientation meeting.  <u>See</u> Doc. #21 at PAGEID 275.  But plaintiffs have not shown that they were deceived, under duress or unable to request more time to review the documents.  As plaintiffs put it, they just "wanted to start making money as soon as possible," <u>see</u> Doc. #21 at PAGEID 279, and they knowingly and voluntarily chose to accept employment, regardless of whether they chose to read the documents.  <u>See</u> <u>ABM Farms, Inc. v. Woods</u>, 81 Ohio St. 3d 498, 503, 692 N.E.2d 574, 579 (Ohio 1998) (citing <u>Upton v. Tribilcock</u>, 91 U.S. 45, 50 (1875) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.")).

Accordingly, the court finds that plaintiffs knowingly and voluntarily agreed to arbitrate their disputes with defendants.

### 2.    Whether the DRP Agreement is Unconscionable

In Ohio, unconscionability is defined as "'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.'"  <u>Dorsey v. Contemporary Obstetrics & Gynecology, Inc.</u>, 680 N.E.2d 240, 243 (Ohio Ct. App. 1996) (quoting <u>Collins v. Click Camera & Video, Inc.</u>, 621 N.E.2d 1294, 1299 (Ohio Ct. App. 1993)).  Ohio courts conduct a two-prong inquiry into whether a contract is unconscionable. <u>Morrison v. Circuit City Stores, Inc.</u>, 70 F. Supp. 2d 815, 821 (S.D. Ohio 1999) *aff'd on other grounds*, 317 F.3d 646 (6th Cir. 2003) (citing <u>Dorsey</u>, 680 N.E.2d at 243).  One prong looks at the relative bargaining power of the contracting parties to determine whether procedural unconscionability exists, while the other prong focuses on whether the contract terms are so unfair and unreasonable as to constitute substantive unconscionability. <u>Id</u>.   Under Ohio law, the party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable.  <u>Stachurski v. DirecTV, Inc.</u>, 642 F.Supp.2d 758, 767 (N.D. Ohio 2009) (citing <u>Hayes v. Oakridge Home</u>, 122 Ohio St.3d 63, 67, 908 N.E.2d 408, 412 (Ohio 2009)).

In determining procedural unconscionability, Ohio courts look to "factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the

terms were explained to the weaker party, and whether alterations in the printed terms were possible." Cross v. Carnes, 132 Ohio App.3d 157, 170, 724 N.E.2d 828, 837 (Ohio Ct. App. 1998). "The crucial question is whether each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print . . . ?" Ohio Univ. Bd. of Trs. v. Smith, 132 Ohio App.3d 211, 220, 724 N.E.2d 1155, 1161 (Ohio Ct. App. 1999) (internal quotation marks omitted).

Plaintiffs argue that the procedural unconscionability prong is satisfied because Johncol had a superior bargaining position, as evidenced by plaintiffs' inability to alter the terms of the DRP and by defendants' ability to readily find other individuals to fill delivery driver positions.

The court notes that plaintiffs have not supported the factual premises of their argument. That is, they have submitted no evidence showing that they attempted to alter the terms of the DRP and were unsuccessful, or that such an attempt would have been futile. Nor have offered evidence regarding the ease with which defendants hired delivery drivers.

But even assuming that plaintiffs' argument is factually accurate, the situation plaintiffs describe does not rise to the level of procedural unconscionability. The Ohio Supreme Court has held that "inequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St. 3d 352, 362, 884 N.E.2d 12, 23 (Ohio 2008); see also McCaskey v. Sanford-Brown Coll., No. 97261, 2012 WL 1142880, at *5 (Ohio Ct. App. Apr. 5, 2012) (holding that mere fact that plaintiff "could not alter the terms of the agreement does not mean the terms are unenforceable"). Rather, "there must be some evidence that, in consequence of the imbalance, the party in the weaker position was defrauded or coerced into agreement to the arbitration clause." Stachurski v. DirecTV, Inc., 642 F.Supp.2d 758, 768 (N.D. Ohio 2009); see also Williams v. Aetna Fin. Co., 83 Ohio St.3d 464, 700 N.E.2d 859 (Ohio 1998) (holding that arbitration clause was unconscionable where there was evidence of oppressive and fraudulent intent). Plaintiffs have made no such showing. See also Short v. Res. Title Agency, Inc., No. 95839, 2011 WL 1203906, at *4 (Ohio Ct. App. Mar. 31, 2011) ("[I]n the context of employment contracts, [ ] when a candidate for employment is free to look elsewhere for employment and is not otherwise forced to consent to the arbitration agreement, the agreement to arbitrate is not unconscionable.") (citing cases).

Plaintiffs have also failed to show that the DRP Agreement is substantively unconscionable. "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." Hayes 122 Ohio St. 3d at

69, 908 N.E.2d at 414.  The Ohio Supreme Court held in <u>Hayes</u> that "waiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable." <u>Id.</u>, 122 Ohio St. 3d at 70, 908 N.E.2d at 414.

Plaintiffs argue that the DRP is unfair because it sets forth a three-step, pre-arbitration process that was designed to be so complex and burdensome that employees would be discouraged from pursuing mediation.  In Step One, employees are directed to bring concerns directly to supervisors or a member of management.  In Step Two, dissatisfied employees may request direct review by Johncol's President, Mr. Hertzman, of the complaint, concern or dispute.  An employee initiating Step Two review has the opportunity to submit a written statement, and Mr. Hertzman is expected to discuss the matter with the employee and supervisor and to review any relevant documents.  In Step Three, an employee may request that an outside mediator be retained, at Johncol's expense, to engage in non-binding mediation.  Step Four is binding arbitration.  <u>See</u> DRP Booklet at PAGEID 230-33, 241-43.

The court finds that plaintiffs have not demonstrated how this process is unfair or so complex that it would discourage employees from pursuing resolution of a good faith complaint or dispute.  Plaintiffs emphasize that it is unrealistic to expect entry-level employees to navigate the process without the assistance of counsel.  However, nowhere does the DRP prohibit an employee from retaining counsel or other assistance.  Nor are the steps beyond the ability of an entry-level employee to understand and perform: (1) talk to a supervisor, (2) submit a written statement and (3) request (and attend) mediation.  Moreover, as plaintiffs concede, the DRP provides that when an employee is presenting a "legal claim" (as would be the case here) he may skip Steps One and Two. <u>See</u> DRP Booklet at PAGEID 235, 246.

Accordingly, the court finds that the DRP is not unconscionable.

**B.  The Scope of the DRP**

It is undisputed that the claims asserted in the complaint under the FLSA for failure to pay wages and for retaliatory termination are included within the scope of the DRP, which included "claims for wages or other compensation" and "claims for retaliation under any law."

**C.  Whether Congress intended the Claims to be Nonarbitrable**

It is well-established that a plaintiff may agree to arbitrate a right arising under the FLSA. <u>See</u>, <u>e.g.</u>, <u>Floss v. Ryan's Family Steak Houses, Inc.</u>, 211 F.3d 306, 313 (6th Cir. 2000) ("Though a claim under the FLSA certainly serves a purpose beyond providing relief to an individual claimant,

we fail to see how the broader policies furthered by such a claim are hindered when that claim is resolved through arbitration."); Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002) ("We therefore hold that FLSA claims may properly be resolved in mandatory arbitration proceedings."); Bailey v. Ameriquest Mortgage Co., 346 F.3d 821 (8th Cir.2003) (same).

However, even when the FAA can be invoked to enforce arbitration of a federal statutory claim, the arbitral forum must "allow for the effective vindication of that claim." Floss, 211 F.3d at 313. Plaintiffs argue that they would not be able to vindicate their FLSA rights in the arbitral forum because the DRP limits the number of depositions that each party can take to two. In support of their argument, plaintiffs cite Walker, where the court found that the arbitral forum did not allow for the effective vindication of FLSA rights because, in part, the parties were limited to one deposition each. Walker, 400 F.3d at 387.

The court finds that Walker is distinguishable from the case at hand. In Walker, the arbitration agreement allowed the employer to "effectively determine[ ] the three pools of arbitrators" (a pool comprised of supervisors, a pool of attorneys, a pool of employees) from which the arbitration panel would be drawn, "thereby rendering the arbitral forum fundamentally unfair to claimants who are applicants or employees." 400 F.3d at 386. In light of this "structural bias in the make-up of the arbitration panel," the discovery limitation of just one deposition "would stymie a [claimant's] attempt to marshal the evidence to prove" his claim. Id. at 387-88. The court concluded that "the limited discovery, controlled by a potentially biased arbitration panel, . . . creates the unfairness to claimants." Id. at 387. The court in Walker, however, noted that in the ordinary case, "the opportunity to undertake extensive discovery is not necessarily appropriate in an arbitral forum, the purpose of which is to reduce the costs of dispute resolution. Indeed, when parties enter arbitration agreements at arms-length they typically should expect that the extent of discovery will be more circumscribed than in a judicial setting." Id.

Here, there is no concern regarding the bias of the arbitrator. The DRP provides for arbitration through an independent organization, the American Arbitration Association, and selection of an arbitrator is made through a combined ranking of the preferences of both parties. Each party can take two depositions and conduct document discovery, subject to the limitation that it be conducted in an "expeditious and cost-effective manner." See DRP Booklet at PAGEID 234, 245. Moreover, each party may "subpoena witnesses to the arbitration in accordance with the Federal Rules of Civil Procedure." Id. Thirty days before the arbitration, the parties are required to

"exchange lists of witnesses, including any experts, and copies of all exhibits to be used at arbitration." Id.

The court finds that the DRP provides for a procedure that, despite the limitation on depositions, affords a claimant a fair and adequate opportunity to prove his claim and vindicate his rights. The situation at hands bears more similarity to the arbitration agreement approved in Howell v. Rivergate Toyota, Inc., 144 Fed. App'x 475 (6th Cir. 2005) than to the arbitration agreement in Walker:

> Nor is the scope of discovery allowed by the Procedure so narrow that it renders the arbitral forum inadequate to vindicate statutory rights. The Procedure allows for document production, three depositions of fact witnesses, and additional discovery upon a showing of good cause. The Procedure limits discovery to matters that are admissible under the Federal Rules of Evidence . . . . This limitation is not likely, in our view, to prejudice an employee's ability to prove his statutory claims. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that "more limited" discovery does not render an arbitral forum inadequate for resolution of statutory claims) . . . .

144 Fed. App'x at 480-81; see also Reyna Capital Corp. v. McKinney Romeo Motors, Inc., No. 24538, 2011 WL 6927687, at **4-5 (Ohio Ct. App. Dec. 30, 2011) (relying on Howell in upholding a two-deposition limit because it was "in keeping with the cost-reducing purpose of arbitration").

### D.    Public Policy

Plaintiffs contend that the court should not enforce the DRP because it violates public policy. Plaintiffs argue that the FAA was created to encourage business-to-business arbitration agreements and that such agreements should not be allowed to extend into the employment realm. The court finds this argument to be unavailing in light of the substantial body of case law upholding arbitration agreements between employees and employers. Indeed, the Sixth Circuit has expressly rejected the type of public policy argument that plaintiffs have raised here:

> While it is unjust to bind a party to agreement in the absence of assent or to enforce a contract that is unconscionable, it betrays an unfounded hostility towards arbitration when courts actively seek to void substantively reasonable agreements procured through fair procedure. The Supreme Court has "rejected generalized attacks on arbitration that rest on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 89–90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (citations omitted). Even claims "arising under a statute designed to further important social policies" may be arbitrated provided that "the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." Id. at 90, 121 S.Ct. 513.

> The employer at issue here did not try to hide its mandatory arbitration policy or try to trick its employees into agreeing to the policy. Nor did the employer choose an arbitration forum that would discourage employees from submitting disputes or favor the employer in the resolution of those disputes. In the absence of evidence that assent to the arbitration agreement was procured though unfair means or that the agreement itself was substantively unfair, courts should enforce mandatory arbitration agreements on the same basis as any other agreement that employers require as a condition of employment.

Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 979 (6th Cir. 2007). See also United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960) (noting that federal labor policy favors arbitration).

### E. Lewis v. Epic Systems Corp. and Morris v. Ernst & Young, LLP

Were the court's analysis to end with the issues raised in the original briefing of defendants' motion to compel arbitration, the court would grant the motion. But plaintiffs have filed supplemental briefs noting two recent court of appeals decisions of the Seventh and Ninth Circuits which, if followed here, would lead to the opposite result. See Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016); Morris v. Ernst & Young, LLP, __ F.3d __, 2016 WL 4433080 (9th Cir. Aug. 22, 2016).

In Lewis, the plaintiff employee brought a putative collective action under the FLSA. He had signed an arbitration agreement which required that wage-and-hour claims against his employer be pursued in arbitration and only on an individual basis. "The agreement did not permit collective arbitration or collective action in any other forum." Lewis, 823 F.3d at 1151. The issue before the court was whether the collective action waiver violated § 7 of the National Labor Relations Act, which safeguards employees' "right to self-organization . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The NLRA makes it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." Id. § 158(a)(1).

The Seventh Circuit held that the collective action waiver violated the NLRA. It found that the term "concerted activities" has "long been held to include 'resort to administrative and judicial forums,'" Lewis, 823 F.3d at 1152 (quoting Eastex, Inc. v. NLRB, 437 U.S. 556, 566 (1978)) and that "both courts and the [National Labor Relations] Board have held that filing a collective or class action suit constitutes 'concerted activit[y]' under Section 7." Id. (citing cases). The court held that the collective action waiver interfered with the right to engage in concerted activities. Id. at 1155 (holding that the waiver "runs straight into the teeth of Section 7. The provision prohibits any

collective, representative, or class legal proceeding"). Moreover, the court rejected the argument that the FAA and the general policy in favor of arbitration trumped the NLRA. It found that the FAA contains a provision, 9 U.S.C. § 2, by which arbitration agreements shall not be enforceable if they are illegal. Because the court found that the collective action waiver was illegal under the NLRA, it held that the waiver was unenforceable under the FAA as well. Id. at 1157.

In Morris, the plaintiff employees likewise brought a putative collective action under the FLSA and had signed an arbitration agreement requiring that wage-and-hour claims against the employer be pursued in arbitration and only on an individual basis. "This 'concerted action waiver' required employees to (1) pursue legal claims against Ernst & Young exclusively through arbitration and (2) arbitrate only as individuals and in 'separate proceedings.'" Morris, ___ F.3d at ___, 2016 WL 4433080, at *1. The Ninth Circuit found that an employees' lawsuit to "achieve more favorable terms or conditions of employment is 'concerted activity' under § 7," id. at *3 (internal quotation marks omitted), and that the NLRA "has long been held to prevent employers from circumventing the NLRA's protection for concerted activity by requiring employees to agree to *individual* activity in its place." Id. at *4 (emphasis in original). The court agreed with Lewis, holding that the concerted action waiver was unenforceable because "an employer may not defeat the right [to concerted activity] by requiring employees to pursue all work-related legal claims individually." Id. at *5. The Ninth Circuit likewise found that the FAA "does not dictate a contrary result":

> The illegality of the "separate proceedings" term here has nothing to do with arbitration as a forum. It would equally violate the NLRA for Ernst & Young to require its employees to sign a contract requiring the resolution of all work-related disputes in court and in "separate proceedings." The same infirmity would exist if the contract required disputes to be resolved through casting lots, coin toss, duel, trial by ordeal, or any other dispute resolution mechanism, if the contract (1) limited resolution to that mechanism and (2) required separate individual proceedings. The problem with the contract at issue is not that it requires arbitration; it is that the contract term defeats a substantive federal right to pursue concerted work-related legal claims.

Id. at *6 (footnote omitted).

In the case at hand, the DRP Agreement provides that all legal claims must be submitted to binding arbitration and that all arbitration must proceed on an individual basis and not on collective or class-wide basis. See DRP Agreement at PAGEID 236, 247. With the exception of plaintiff Hassan's claim for retaliatory termination (which is brought on an individual basis and must proceed to arbitration), the remainder of the claims are brought as a putative collective action.

The court notes that petitions for a writ of certiorari have been filed in both <u>Lewis</u> (No. 16-285, Sept. 2, 2016) and <u>Morris</u> (No. 16-300, Sept. 8, 2016).  Two other circuits have reached holdings that are in conflict with <u>Lewis</u> and <u>Morris</u>.  See <u>Cellular Sales of Missouri, LLC v. NLRB</u>, 824 F.3d 772, 776 (8th Cir. 2016) ("[W]e conclude that Cellular Sales did not violate section 8(a)(1) [of the NLRA] by requiring its employees to enter into an arbitration agreement that included a waiver of class or collective actions in all forums to resolve employment-related disputes."); <u>Murphy Oil USA, Inc. v. NLRB</u>, 808 F.3d 1013, 1018 (5th Cir. 2015) ("Murphy Oil committed no unfair labor practice by requiring employees to relinquish their right to pursue class or collective claims in all forums by signing the arbitration agreements at issue here.").

The court further notes that a recent district court decision from within the Sixth Circuit held in a FLSA case that a collective action waiver in an arbitration agreement was unenforceable. <u>Gaffers v. Kelly Servs., Inc.</u>, __ F.Supp.3d __, 2016 WL 4445428 (E.D. Mich. Aug. 24, 2016).  The district court predicted that the Sixth Circuit, which "has not directly addressed the question," will follow <u>Lewis</u>, in part because the Sixth Circuit has recently issued two decisions (outside of the arbitration context) striking down attempts by employers to contractually limit or waive their FLSA rights.  <u>Id</u>. at *8; <u>see</u> <u>Boaz v. FedEx Customer Info. Servs., Inc.</u>, 725 F.3d 603, 606-07 (2013) (refusing to enforce a clause in an employment agreement that purported to shorten the limitations period for FLSA claims from three years to six months); <u>Killion v. KeHE Distributors, LLC</u>, 761 F.3d 574, 592 (6th Cir. 2014) (holding invalid a clause in a separation agreement signed by terminated employees which contained a comprehensive waiver of any right to pursue class or collective action claims for unpaid wages under the FLSA).  The district court's decision in <u>Gaffers</u> has been appealed (No. 16-2210, Aug. 26, 2016), with appellant raising the issue of whether the district court erred in denying the employer's motion to compel individual arbitration of FLSA claims based on its conclusion that the collective action waiver was illegal.

Plaintiffs here have sought leave to further brief the issue of whether a collective action waiver is unenforceable.  Defendants oppose this request, arguing that: (1) further briefing would not be productive, in that the court is aware of what the cases stand for, (2) the court should not address the issue because any claim by plaintiffs that the waivers constitute an unfair labor practice should have first been raised before the NLRB and (3) plaintiffs waived the argument by failing to raise it in their brief in opposition to the motion to compel.

The court will address defendants' three points in reverse.  The argument that plaintiffs waived their right to argue that the collective action waiver is unenforceable is not well-taken.  The

motion to compel was fully briefed before the Seventh Circuit issued <u>Lewis</u>.  It is true, as defendants point out, that the issue had been addressed by the NLRB in 2012, <u>see</u> <u>D.R. Horton</u>, 357 NLRB No. 184 (2012), and a handful of courts, <u>see</u> <u>Murphy</u>, 808 F.3d 1013, but <u>Lewis</u> represents a significant legal development and creates a circuit split.  It would not serve the interests of justice to preclude plaintiffs from raising the issue.

Turning to defendants' second argument, they cite a recent district court decision wherein the court declined to consider whether a collective action waiver in an arbitration agreement constituted an unfair labor practice because it concluded that the issue should have first been raised by way of a charge before the NLRB.  <u>See</u> <u>Sanchez v. Gen. Elec. Co.</u>, __F.Supp.3d __, No. 2:16-CV-50, 2016 WL 3959161, at *4 (S.D. Tex. July 22, 2016).  This court notes, however, that it appears that no NLRB charge was first brought in <u>Lewis</u> and <u>Morris</u>.  Moreover, the district court in <u>Gaffers</u> opined that the Sixth Circuit, in light of <u>Boaz</u> and <u>Killion</u>, could strike down the collective action waiver solely on the basis that it violated the FLSA, and thereby not reach the issue of whether it also violated the NLRA.  <u>See</u> <u>Gaffers</u>, 2016 WL 4445428, at *8 ("There is no reason, therefore, to consider the impact of the NLRA on Kelly's employment contract.").

The court largely agrees with defendants' other argument.  It is clear what <u>Lewis</u> and <u>Morris</u> stand for.  The court will not preclude the parties from submitting further briefing, but they are advised that the court may find it prudent to await further developments at the appellate level.  It is plausible, if not likely, that the Sixth Circuit or perhaps the Supreme Court will resolve the issue in the foreseeable future.

## IV.    Conclusion

Accordingly, defendants' motion to compel arbitration (doc. 20) is granted as to plaintiff Hassan's individual claim for retaliatory termination.  The court provisionally grants the motion as to the remainder of the claims, but withholds an order compelling arbitration pending further consideration and developments regarding the issue of the whether a collective action waiver in an arbitration agreement violates the NLRA or FLSA.  The parties may, if they wish, submit supplemental briefing on that issue within sixty days and responsive briefs within twenty days after supplemental briefs are filed.  Plaintiffs' motion for leave to file a supplemental brief (doc. 32) is thus granted.

The parties may proceed with discovery and motions practice on the issue of whether the

court should certify the putative collective action.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: September 27, 2016